UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SHAYLA SIMPSON     Plaintiff

v.     CIVIL ACTION NO. 3:19-CV-629

LOUISVILLE METRO GOVERNMENT,     Defendants
et al.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Shayla Simpson ("Simpson") alleges violations of state law and seeks relief under 42 U.S.C. § 1983 for alleged violations of her rights under the Fourth and Fifth Amendments to the United States Constitution against Defendants Louisville Metro Government ("Louisville Metro"), Officer John D. Green ("Green"), Officer Payvand Rakhshan ("Rakhshan"), and Does 1-20. [25-1 at 152-53]. Simpson moves to file a second and a third amended complaint. [DE 17; DE 25]. Louisville Metro moves to dismiss Simpson's first amended complaint and opposes Simpson's motion to file a second and a third one. [DE 20; DE 21; DE 28]. Rakhshan moves to dismiss the claim against him pursuant to Federal Rule of Civil Procedure ("FRCP") 4(m). [DE 22]. Briefing is complete and the matters are ripe. [DE 24; DE 27]. For the reasons below, Louisville Metro's Response and Objection to Motion to File Second[1] Amended Complaint [DE 28] is **GRANTED**, Simpson's Motion to File Third Amended Complaint [DE 25] is **GRANTED IN PART, DENIED IN PART**, Simpson's Motion to File Second Amended Complaint [DE 17] is **DENIED AS MOOT**, Louisville Metro's Motion to Dismiss First Amended Complaint [DE

---

[1] Although the title of this Motion suggests that it objects to Simpson's Second Amended Complaint, the Motion focuses on Simpson's Third Amended Complaint. As a result, the Court interprets the reference to Simpson's Second Amended Complaint in the title as a typographical error.

20] is **DENIED AS MOOT**, and Rakhshan's Motion to Dismiss Pursuant to FRCP 4(m) [DE 22] is **DENIED**.

I. **BACKGROUND**

On August 15, 2019, Simpson "reported a theft when it was discovered that her deposit was missing" from the safe inside the McDonald's where she worked. [DE 25-1 at 155]. Later that day, Green arrived at the restaurant and obtained a copy of the store's surveillance video. *Id.* Simpson and Green watched a portion of the surveillance video together. *Id.* Simpson asserts that the video shows her depositing the money in the safe. *Id.* Green would not allow Simpson to "see all of the video footage of the office where the safe was located, not just the footage where she had placed the deposit into the office." *Id.* at 156.

A few days later, Green asked Simpson to submit to a polygraph examination; Simpson declined. On August 21, 2019, Green and Rakhshan arrested Simpson. *Id.* Green told Simpson that he would let her "go back to work" if she "would just take the polygraph test." *Id.* at 157. She again declined. *Id.* Green charged Simpson with two counts of theft by unlawful taking. Simpson alleges that Green's police reports in the case "indicated they were approved by supervising officers Joy Williams and LaDawn Krantz," but that "neither Joy Williams or LaDawn Krantz are supervising officers." *Id.* at 158.

Simpson asserts that she "was not released when a determination was made for her to be released from jail." *Id.* at 157. She believes that Green "conspired with the unknown employees and officers of the LMDC to have the Plaintiff held at the jail until midnight even though she had qualified earlier in the day to be released from jail." *Id.* As a result, Simpson was "released from the jail after 12:00 a.m. the next morning when she should have been released within a couple of hours of arriving at the jail." *Id.*

During the preliminary hearing in Jefferson County District Court, Green testified that "he had watched the video footage from McDonalds and that the Plaintiff was the only one who was in the safe after she put in the night deposit from her shift." *Id.* at 158. Green also testified that "no one else went into the safe after her to remove any deposits." *Id.* at 159. Green repeated this testimony before a Jefferson County grand jury. *Id.* Based on Green's testimony, the grand jury indicted Simpson for felony theft. *Id.*

When Simpson eventually viewed the complete version of the surveillance video, she discovered that it "showed the Caucasian female night manager removing [Simpson's] night deposit from the safe." *Id.* The Commonwealth of Kentucky dismissed the case against Simpson "as the videos clearly showed that the [she] was not the one who stole the money as it was another night shift McDonald's employee." *Id.*

In September 2019, Simpson sued Defendants in Jefferson County Circuit Court. [DE 1-3]. Defendants removed the case to this Court. [DE 1] On October 19, 2020, Simpson filed her first amended complaint. [DE 16]. One day later, she moved to file a second amended complaint. [DE 17]. On November 19, 2020, Simpson moved to file a third amended complaint. [DE 25]. Louisville Metro moved to dismiss Simpson's first amended complaint and opposes Simpson's motion to file a second and third complaint. [DE 20; DE 21; DE 28]. Rakhshan moved to dismiss the claim against him pursuant to FRCP 4(m). [DE 22].

## II.   DISCUSSION

**A. Simpson's Motion to File Third Amended Complaint [DE 25].**

Federal Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In deciding whether to grant a motion to amend, courts should

3

consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995) (citing *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983)).

"When there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend complaint." *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 3:08-CV-459, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010) (citing *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988)). If the court grants a motion to amend, "the original pleading no longer performs any function in the case." *Clark v. Johnston*, 413 Fed. App'x 804, 811 (6th Cir. 2011) (internal quotation marks and citation omitted). Thus, "when the court grants leave to amend the complaint, a motion to dismiss the original complaint will be denied as moot if the amended complaint adequately addresses the grounds for dismissal." *Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097, at *2 (W.D. Ky. Oct. 4, 2016).

Louisville Metro argues that the Court should deny Simpson's motion to file her third amended complaint because amendment is futile.[2] [DE 28 at 206]. Simpson asserts that "[j]ustice

---

[2] None of the other Defendants objected to Simpson's Motion to File Third Amended Complaint.

4

requires that the Plaintiff be allowed to amend her complaint for a third time in order specify the policies, customs and procedures that were in place with the Louisville Metro Government which contributed to the injuries and damages of the Plaintiff." [DE 25 at 150]. In an attempt to "specify the policies, customs and procedures that were in place with the Louisville Metro Government which contributed to the injuries and damages of the Plaintiff," Simpson added the following allegations against Louisville Metro in her Third Amended Complaint:

> 107. At all times alleged in the complaint, the Defendant Green and Defendant Rakhshan were employees of the LMPD which is an agency within the Defendant Louisville Metro Government.
>
> 108. At all times alleged in the complaint, Defendant Does 1-20 were employees, officers and/or agents of the LMCD which is an agency within the Defendant Louisville Metro Government.
>
> 109. That all Defendants were acting under the color of law and within the scope of their employment.
>
> 110. That the Defendants Green, Rakhshan and Does 1-20 were the ones who caused the injuries and damages to the Plaintiff during their employment with Defendant Louisville Metro Government's agencies/departments.
>
> 111. That Louisville Metro Government through its departments of LMPD and LMCD are also responsible for the damages and injuries that occurred to the Plaintiff based on their customs, policies, and practices.
>
> 112. That Louisville Metro Government within its Louisville Metro Police Department had a policy of allowing civilians to review and approve police reports and supplemental police reports without a supervising police officer actually reviewing and approving the reports.
>
> 113. That Louisville Metro Government through **Chief Steve Conrad**, who was a policy maker and in charge of the supervising officers **failed to adequately supervise and review as the police reports and the supplement reports**.
>
> 114. That this policy also allowed the civilians to place their names on police reports as supervising officers when they gave their approval for said reports which is not true.

115. **That the use of the policy wherein there are no actual police supervising officers reviewing what is occurring contributed to the Plaintiff's injuries and damages in this action as there was a failure to supervise the police officers in this action.**

116. That the LMPD also has a policy and custom that police officers are to wear activated body cameras.

117. That Defendant Rakhshan is listed as an assisting officer to Defendant Green in the arrest of the Plaintiff.

118. That no body camera footage has been located of Defendant Rakhshan when the Plaintiff was arrested.

119. **That the failure of the LMPD supervising officers and Chief Conrad to adequately supervise and ensure that each officer has their body cameras activated during encounters and arrests contributed to the Plaintiff's injuries and damages in this action**.

120. That Louisville Metro Government thru its department of Louisville Metro Corrections (hereinafter "the LMCD") has a policy and custom of when people are arrested and housed at the facility that there is a head count of all inmates at the beginning of each shift and at the end of each shift. There are also head counts that are done when someone may be moved to and from a particular area within the jail, for example when inmates are taken to have recreation time.

121. That the Plaintiff was at the jail right early in the morning and was not released until the next day even though she was supposed to be released within less than two (2) hours after she was booked in at the jail.

122. That the execution of the jail's policy concerning how the head counts are to be done should have determined several times that the Plaintiff was still at the jail and should have been released.

123. That Mr. Mark Bolton, the head of Louisville Metro Corrections at the time of the Plaintiff's arrest and incarceration, failed to ensure adequate training and supervision of the officers with respect to the head count policy and the releasing of people from the facility.

124. That there should have been four (4) or more head counts from the time that the Plaintiff was booked into the jail until the time that the Plaintiff was released whereas the Plaintiff should have been released over more than twelve hours (12) earlier than when she was released.

> 125. **That the failure to adequately train and supervise the correction officers, Defendant Does 1-20, contributed to the Plaintiff's injuries and damages in this action.**

[DE 25-1 at 164-67 (emphasis added)].

A plaintiff asserting a municipal liability claim under § 1983 must allege that the federal violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). To properly assert a municipal liability claim, a plaintiff must sufficiently allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell,* 436 U.S. at 694. "In the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted the *Iqbal*/*Twombly* pleading standards strictly." *Spainhoward v. White Cty., Tennessee*, 421 F. Supp. 3d 524, 544 (M.D. Tenn. 2019).

Based on the allegations in her Third Amended Complaint, especially the allegations that the Court has emphasized, it appears as though Simpson is asserting that Louisville Metro had an illegal official policy of civilian review of police reports and a policy of failing to adequately train and supervise its employees on how to use their body cameras and how to conduct heads counts.

    1. <u>Illegal Official Policy</u>

To state a § 1983 claim for a municipal policy or custom, the plaintiff must "identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). "A municipality cannot be held responsible for a constitutional deprivation unless

/

there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Sexton v. Kenton Cty. Det. Ctr.*, 702 F. Supp. 2d 784, 790 (E.D. Ky. 2010). "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Mann v. Helmig,* 289 Fed.Appx. 845, 850 (6th Cir.2008) (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1388 (4th Cir.1987)).

Louisville Metro argues that Simpson failed to "specify" how its alleged policy of "civilians reviewing and approving police reports without being approved by a supervising officer" resulted "in the alleged constitutional violations." [DE 28 at 207]. Simpson did not respond. The Court agrees with Louisville Metro. Simpson failed to state a claim of an illegal official policy because she has not sufficiently alleged that the policy of having a civilian review board was the "proximate cause" of her constitutional injury. *See Mann*, 289 Fed.Appx. at 850. Moreover, she expressly alleged that this policy only "contributed" to her injuries. [DE 25-1 at 165 ("That the use of the policy wherein there are no actual police supervising officers reviewing what is occurring contributed to the Plaintiff's injuries and damages in this action as there was a failure to supervise the police officers in this action"). As a result, amendment is futile as to this theory of municipal liability.

2. <u>Inadequate Training or Supervision</u>

To state a failure-to-train or failure-to-supervise claim, the plaintiff must allege: 1) "the training or supervision was inadequate for the tasks performed"; 2) "the inadequacy was the result of the municipality's deliberate indifference"; and 3) "the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690,

8

700 (6th Cir. 2006). As to the municipality's "deliberate indifference," the plaintiff must either allege: 1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or 2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir.2005); *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 409 (1997).

Simpson has failed to state both a failure-to-train and a failure-to-supervise claim against Louisville Metro. Simpson has not asserted, even in a conclusory fashion, that the officers had a pattern of committing similar unconstitutional violations. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 944 (M.D. Tenn. 2012) (dismissing failure-to-train claim where plaintiff "[pled] no facts and cite[d] no prior instances of unconstitutional conduct to support his conclusory allegation that Metro was aware of a history of illegal arrests, much less that they ignored them"); *Spainhoward*, 421 F. Supp. at 544 (dismissing failure-to-train claim where plaintiff did "not set forth *any* facts that there were prior instances of similar misconduct to show that White County was on notice that its training and supervision with respect to vehicular pursuits or the use of force was deficient") (emphasis in original); *Cooper v. Rhea Cty., Tenn.*, 302 F.R.D. 195, 201 (E.D. Tenn. 2014) (finding plaintiff failed to state negligent training and supervision claim where plaintiff only alleged that "[t]he customs, practices, and policies of the Rhea County Sheriff's Department, as promulgated by Defendant, Rhea County, Tennessee through Defendant, Mike Neal, facilitated a substantial risk of serious harm and injury to Plaintiff, and Defendant, Mike Neal, failed to properly train and supervise the Arresting Officers so as to prevent the serious bodily injuries suffered by the Plaintiff").

Simpson has likewise failed to sufficiently assert a claim based on a single violation. Nowhere in her Third Amended Complaint does Simpson allege "a complete failure to train the [officers], training that is so reckless or grossly negligent that future . . . misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir.1982) (internal quotation marks omitted); *see Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (dismissing municipal liability claims because "[s]tripped of legal language, [p]laintiff's [c]omplaint contains no fact that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department" and "fails to allude to any incident of brutality other than the one [the plaintiffs] allegedly suffered"). Nor has she plausibly alleged that Louisville Metro's deliberate indifference "created a training regimen so deficient that it was the actual *cause* of" Green's, Rakhshan's, or the Does' unconstitutional conduct. *Harvey*, 453 F. App'x 557 at 568 (emphasis in original).

The Court thus concludes that the Third Amended Complaint lacks sufficient allegations to state a claim for municipal liability against Louisville Metro under an illegal policy theory, a failure-to-train theory, and a failure-to-supervise theory. As a result, the Court finds that amendment is futile as to the claim against Louisville Metro and denies Simpson's Motion as to the allegations and claims against Louisville Metro. That said, hearing no objection from the remaining Defendants and exercising its "broad discretion," the Court grants Simpson's Motion as to the allegations and claims against those Defendants. *See WEL Companies, Inc. v. Haldex Brake Prod. Corp.*, 467 F. Supp. 3d 545, 551 (S.D. Ohio 2020) ("Trial courts enjoy broad

discretion in deciding motions for leave to amend a complaint") (citing *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)).

**B. Rakhshan's Motion to Dismiss Pursuant to FRCP 4(m)**

Rakhshan argues that the Court should dismiss the claims against him because Simpson failed to comply with the requirements of FRCP 4(m). [DE 22 at 134]. In her response, Simpson explains why Rakhshan was not served within ninety days of the filing of her Complaint:

> Within less than fifteen (15) days, the Defendants had the state action removed to federal district court. Once this matter was removed, Defendant Rakhshan's Counsel reached out to undersigned Counsel with regard to issues concerning Defendant Rakhshan and negotiations concerning a resolution for Defendant Rakhshan were under way. The state court later confirmed that Defendants Green and Rakhshan refused to claim the service packet for this matter even though both Defendants were on notice of this action. See Exhibit 1 and DN 1. Defendant Rakhshan was having ongoing negotiations. At the point that the parties were negotiating concerning Defendant Rakhshan, the Jefferson County Attorney accepted and waived service for Defendant Green in this action. See Exhibit 2 – Waiver of Service.
>
> In June 2020, this Court issued a Show Cause Order that was addressed by the Plaintiff. See DN 8. The Plaintiff demonstrated good cause in the response that was filed with the Court. The Plaintiff then awaited a response from the Court based on the Plaintiff's response to the Show Cause Order wherein the Plaintiff requested the time of service to be extended or order that service occur within a specified period of time. With no response from the Court, a summons was issued for the Defendant. Also, based on the summons that issued in this matter, the Defendant has been served personally by Jackson Investigations. See attached Exhibit 3 – Proof of Service of Payvand Rakhshan.

[DE 24 at 142-43].

Fed. R. Civ. P. 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." "[T]he court has discretion to permit late service even absent

11

a showing of good cause." *John W. Stone Oil Distrib., LLC v. PBI Bank, Inc.*, No. 3:09-CV-862-H, 2010 WL 3221800, at *1–2 (W.D. Ky. Aug. 12, 2010). Based on the circumstances here, including the fact that Simpson has since served Rakhshan and that he apparently had actual notice of this suit during its pendency, the Court finds that Simpson has shown "good cause" for her failure to comply with Fed. R. Civ. P. 4(m).

### III.  CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Louisville Metro's Response and Objection to Motion to File Second Amended Complaint [DE 28] is **GRANTED**.

(2) Simpson's Motion to File Third Amended Complaint [DE 25] is **GRANTED IN PART, DENIED IN PART**.

(3) Simpson shall file her Third Amended Complaint within seven (7) days of this Opinion. The Third Amended Complaint shall not include the claims and allegations against Louisville Metro as the Court has found amendment against Louisville Metro is futile.

(4) Simpson's Motion to File Second Amended Complaint [DE 17] is **DENIED AS MOOT**.

(5) Louisville Metro's Motion to Dismiss First Amended Complaint [DE 20] is **DENIED AS MOOT**.

(6) Rakhshan's Motion to Dismiss Pursuant to FRCP 4(m) [DE 22] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

September 8, 2021

Copies to:   Counsel of record